## Mulhollen Appeal.

588

Argued April 18, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Clarence E. Davis,* with him *Ray Patton Smith,* for appellant.

*Chas. S. Evans,* of *Evans & Evans,* for appellee.

OPINION BY RHODES, J., September 27, 1944:
Appellant, a school teacher, was dismissed by the

Board of School Directors of Summerhill Township, Cambria County, on the ground of incompetency. Her successive appeals to the Superintendent of Public Instruction and the court below have resulted in decisions adverse to her. She has now appealed to this court.

By stipulation on the record at the hearing de novo in the court below, it was agreed that all the procedural steps preliminary to the hearing had been regularly followed. The controlling question raised by the assignments of error is whether there is competent evidence to support the findings of fact, and whether those findings in turn support the decree of the court below. Findings of fact supported by competent evidence must be accepted on appeal. *Lane's Appeal,* 141 Pa. Superior Ct. 259, 262, 14 A. 2d 573. Although the testimony was not taken before Judge GRIFFITH, who wrote the opinion for the court below, his findings are entitled to the same weight as if it had been in view of the stipulation [1] of the parties.

The legislature has not only provided that incompetency shall be one of the valid causes of terminating the contract of a professional employee, but has also established a formula for the determination of the employee's status in that respect.[2]

---

[1] The Stipulation of Counsel provided "that the matter be disposed of by the Court as now constituted with the same force and effect as if the testimony had been taken before the Judges of the Court as now constituted."

[2] "The only valid causes for termination of a contract entered into with a professional employe in accordance with the provisions of this section shall be—incompetency ...... In determining whether a professional employee shall be dismissed for incompetency, the professional employe shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public

Appellant's teaching was observed on three occasions in the month of March, 1940, by different assistant county superintendents who rated her unsatisfactory on the cards provided for rating purposes agreeably to the legislative direction.[3] The evidence of her incompetency went beyond this, however, and included the testimony of the county superintendent and appellant's supervising principal, as a summary hereinafter quoted will show. The court below made no specific findings of fact as such, but its opinion reflects the evidence which was accepted by it in arriving at its conclusion that appellant was incompetent. All of the facts referred to are supported by the record; they were apparently believed by the court below; they are sufficient to establish appellant's lack of ability to discharge the required duties of a teacher; and they support the finding of incompetency. From the opinion of the court below these facts appear as follows: "The first witness called by the appellee was Miss Clara Shryock, who has been an Assistant County Superintendent since 1924. She testified that on numerous occasions over the past years she observed the appellant's teaching. She observed her last on the 27th day of March, 1940, and was in her room for approximately two hours. She testified that Miss Mulhollen was inclined to be nervous; that she showed very little evidence of technical knowledge and skill; that there was little evidence of preparation for the lessons; that the lesson was not organized; that she made errors in the Geography lesson; that her spoken English was poor; that she did not encourage the participation of all of the children

Instruction immediately following the effective date of this act ......" The School Code, Act of May 18, 1911, P. L. 309, art. 12, §1205a, as last amended by act of June 20, 1939, P. L. 482, §2, 24 PS §1126.

[3] The rating cards provided for detailed appraisal of the teacher under four headings—Personality; Preparation; Technique; and Pupil Reaction.

in the recitation and that as a result out of forty-one children in the class only six or eight followed what was going on; that there was a great deal of confusion in the room; that the pupils' use of English was poor and she did not correct it; that there was talking in an undertone going on during the lessons; that the wall map was not used in the Geography class, although it was available; that she had given Miss Mulhollen an unsatisfactory rating on the rating card provided for by the act of assembly; that she had never, in past years, given her a high rating as a teacher because her work had never been good, and that she had never observed Miss Mulhollen do a good piece of work. She testified that in her opinion the appellant was incompetent as a teacher.

"Miss Sarah Jones, who had been an Assistant County Superintendent for many years, next testified. Miss Jones testified that the appellant mispronounced words; that time was wasted during the lessons because the children were 'fussy'; and that she reported on the rating card that Miss Mulhollen's work as a teacher was unsatisfactory and that in her opinion she was incompetent.

"Daniel L. Auchenbach, the third Assistant County Superintendent, testified that he visited the appellant's school room on the morning of March 5, 1940, and again on the afternoon of the same day. He said that her method of teaching spelling was unsatisfactory; that the appellant used very poor English; that the pupils were not guided in the penmanship class, but allowed to write as they willed; that he observed that her English and punctuation were not good; that there were many errors in a test in history prepared by the appellant in her own handwriting, a hectographed copy of which was introduced in evidence and identified as Appellee's Exhibit L; that the appellant made several errors in English and failed to correct similar errors

made by the pupils.

"Mr. Auchenbach further testified that appellant used poor judgment in handling the spelling class; that the pupils displayed a very poor attitude toward their work, at least partially because the same pupils were called upon repeatedly; and that he had reported on the rating card that the appellant was unsatisfactory and in his opinion Miss Mulhollen is incompetent as a teacher.

"Dr. Stull's testimony was not based on personal observation of the appellant's teaching, but was merely his conclusion from an examination of the rating cards and reports of his assistants. His conclusion was that her teaching was unsatisfactory.

"Edward F. McGuire, Supervising Principal of the Summerhill Township Schools, testified that Miss Mulhollen had been transferred from her position as a teacher of the second grade in another school to the fifth grade in the Beaverdale school in an effort to improve her teaching. It appears that on the 15th day of August, 1939, a resolution was adopted by the School Board directing her transfer, 'with the understanding that considerable improvement in her teaching must be shown, or the Board will be forced to dismiss her.' This resolution was unanimously adopted.

"Mr. McGuire has been Supervising Principal for the past six years and has been a teacher in the same school district since 1928. He observed the appellant's teaching at rather frequent intervals during the 1939-1940 school year, and testified at length as to his observations. He stated that when he made suggestions for the purpose of assisting her in improving her teaching she received the suggestions well but apparently made no effort to improve her teaching as a result of these suggestions. Among other things, he testified that in the Geography class neither the wall maps nor the pictures and maps in the textbooks were referred to during the lesson and that the questions in the textbook were read

aloud by the pupils but not answered; that only eight of the pupils in the room took any part in the discussion; and that there was considerable undertone and commotion in the room. In the history class, he stated that only six of the pupils participated in the lesson and that no opportunity was given to the children to do any original thinking, and that no definite objectives could have been in mind; that the lesson showed a lack of preparation; that of the twenty-three questions she asked the class, she answered fifteen of them herself; that the children did not seem to be very much interested in the lesson and were talking in an undertone during the class; that the appellant admitted that her teaching was not up to par, but attributed it to her physical condition, in that her eyes were giving her some difficulty. Mr. McGuire further testified that in an arithmetic class some children made no great effort to take the given test at all or to complete it; that of the forty-four pupils in the room eighteen were helped by the teacher and seven others were helped by nearby students during the test. He testified that in the spelling class many pupils did not pay attention; that some words were misspelled by the pupil who was asked to read the test list from which the corrections were to be made, and this was not corrected by the teacher; that the pupils corrected each other's papers and in some cases reported the wrong number of words misspelled; that when the first spelling test was given to the children and they corrected the papers themselves, there were eighteen perfect papers; that the witness himself gave the same test the second time, corrected the papers himself, and found only two perfect papers.

"Mr. McGuire also called attention to many more incidents which he says show the incompetency of the appellant. We might refer, for example, to Appellee's Exhibits F and G, which purport to be a list of markings at the end of the term test for the school year

1939-1940, that is, for the semester ending in April, 1940. On this list of markings, out of a total of forty-four pupils twelve were given a lower mark than the mark they were entitled to, thirty were given a higher mark than they were entitled to, and only two were given the correct mark. This resulted in a hopeless confusion in the relative standing of the pupils. For example, the pupil entitled to the first position in the class according to the mark the appellant herself had given on the test was placed in the twenty-ninth position, and the pupil entitled to the second place in the class according to her markings was placed in the twenty-fifth position. It may be observed that when the appellant was called to the witness stand she gave no clear and unequivocal explanation of this situation and this almost incredible series of errors."

It may be said that the record is not devoid of circumstances which might have resulted in a different view of the evidence by another fact-finding body. Appellant had been teaching in the schools of Summerhill Township for twenty-three years, and it is difficult to find the reason for the delay in discovering that she was unfit for her position. If all of appellee's testimony is believed, it must also follow that the supervisory officials concerned have been somewhat derelict in their duty to the school children and taxpayers of the district in not sooner dispensing with the services of appellant. The lively interest which they displayed in March, 1940, resulting in observations by three different assistant county superintendents in that month, two of them on the same day, and the filing of charges against appellant by the school board in August, appear to be significant.

Appellant's argument directed to the competency of the testimony of Dr. A. M. Stull, Superintendent of Public Schools of Cambria County, has no basis in the assignments of error, and therefore is irrelevant. Al-

though various objections were made when his testimony was offered and a motion to strike it out was denied, with an exception to appellant, there is no assignment directed to this action of the court. It may be said, however, that we find no reason for the exclusion of the testimony of a supervisory official, qualified as an expert, as to the competency of a teacher, in reply to a hypothetical question. "Testimony to professional skill, concerning either party or witness, when furnished by professional persons qualified to know, is also generally regarded as receivable": 4 Wigmore on Evidence, 2d Ed., §1984, p. 223. Admittedly, the testimony of Dr. Stull was based on the observations of others and not his own. The attack on his testimony, while constituting a challenge to its weight, did not go to its inherent admissibility as expert testimony. In any event, the court below seems to have relied principally upon the testimony of those who actually observed the teaching of appellant, as the evidence quoted above indicates; this testimony was sufficient in itself to support the court's conclusions.

We think one feature of Dr. Stull's testimony calls for comment. The rating cards, described to some extent in footnote 3, also contain the following instruction: "3. Ratings should have the support of anecdotal records. In the case of unsatisfactory ratings, such anecdotal records must be maintained in the office of the superintendent of schools and a copy supplied to the employe immediately after he has been rated." When asked whether appellant had been supplied with a copy of the anecdotal records submitted and filed by the assistant county superintendents, Dr. Stull replied: "The answer is no, and the explanation is that item No. 3 of this rating card is not a part of the statute. We have complied with the statute, and item number three constitutes a private record, and the last two lines require something that is incompatible. ......

The word 'immediately' in the next to the last line and the last line, I maintain is not subject to interpretation; that it does not mean tomorrow or next week; it means now. When we see the work of the teacher, we take notes. There is no original anecdotal record until we get to the office and transcribe our notes and put it into English, making a record. Therefore, it is an impossibility to supply to the employe immediately after he has been rated a copy of the anecdotal record, for it does not exist except in notes. ...... We consider that anecdotal report our private property, because the statute does not mention it. We assume that in the absence of statute it is our prerogative to interpret and imply what we think is morally correct." The fallacious emphasis upon the word "immediately" was summarily and correctly dispelled by Judge GREER as follows: "We will dispose of that. 'Immediately' in this instance means a reasonable time after you have opportunity to return to your office and make these reports." The county superintendent and his assistants are subordinate to the Department of Public Instruction, which, under article 13, §1301, of the Administrative Code, Act of April 9, 1929, P. L. 177, 71 PS §351, acceded to the powers and duties of the Superintendent of Public Instruction, who had, under article 10, §1001, of the School Code, Act of May 18, 1911, P. L. 309, 24 PS §901, "Supervision of all the public schools of this Commonwealth." Section 1302 of the Administrative Code, supra, 71 PS §352, specifically confers upon the Department of Public Instruction the power and duty "to administer all of the laws of this Commonwealth with regard to the establishment, maintenance, and conduct of the public schools, and particularly the act, approved the eighteenth day of May, one thousand nine hundred and eleven (Pamphlet Laws, three hundred nine) [School Code of 1911, its amendments and supplements]." In providing a

method of rating, the legislature has said, section 1205, subpar. (a), of the School Code, as last amended, 24 PS §1126, that "the professional employe shall be rated ...... in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction ......"

As we view it, the dismissal of a professional employee is not the sole objective to be attained by the rating procedure. It is also to be expected that improvement in the ability of such employee with consequent benefit to the pupils will be achieved by bringing to the attention of the professional employee in concrete form such deficiencies as may exist in order that they may be remedied.

"The fundamental policy of our public school system is to obtain the best educational facilities for the children of the Commonwealth. To this end must be subordinated all personal and partisan considerations": *Com. ex rel. v. Sunbury School District et al.*, 335 Pa. 6, at page 11, 6 A. 2d 279, at page 281.

Furthermore, the specifications in the rating cards are so general in character as to place a professional employee at the mercy of a supervisory official unless required to be substantiated by anecdotal records which are to be supplied to the employee being rated with reasonable promptness after the rating has been made. The requirement that in the case of unsatisfactory ratings such anecdotal records be maintained in the superintendent's office, and a copy supplied to the employees so rated, is a salutary one which should be obeyed.

The order of the court below is affirmed, at appellant's cost.