## Taggart, Appellant, *v.* Board of Directors of Canon-McMillan Joint School System.

Argued October 5, 1962.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*James R. Donaldson,* for appellant.

*Samuel L. Rodgers,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 13, 1962:

On May 2, 1938, M. L. Taggart and the School Board of Canonsburg entered into a contract providing that

he was to receive compensation at the rate of $1,800 a year on the basis of an annual nine-months term. In this contract he was referred to as "Assistant Principal". In 1954 the school districts of Canonsburg, Cecil Township and North Strabane Township formed the Canon-McMillan Joint School System, Taggart continuing his employment therein.

On June 19, 1956 the board of directors of the joint school system elected Taggart as principal of the Canonsburg High School at a salary of $6,500 a year. On March 24, 1960 the board elected him principal of the junior high school in Canonsburg, beginning with the 1959-60 term, at a salary of $7,500 a year for a ten-month term, the salary to be paid over a twelve-month period.

On March 25, 1960 Taggart was informed of this action of the school board and requested to sign the contract which embraced the terms specified in the action of the school district. Taggart refused to sign the contract because it did not include an extra month's compensation, his contention being that his original contract provided that he was entitled to a year's salary on the basis of nine months' work, and that therefore if he was compelled to work an extra month he should receive extra compensation for that month.

On May 25, 1961 Taggart was notified by the superintendent of schools of the district to appear in his office by June 2, 1960 to sign the contract. Taggart declined to appear and to sign.

On February 13, 1962 Taggart entered a suit in mandamus in the Court of Common Pleas of Washington County against the Board of Directors of the Canon-McMillan Joint School System, averring: "The Defendant has a duty to pay the Plaintiff for services performed beyond the 9 month term contained in his present contract and, if a contract covering 10 months is required, has a duty to tender a contract containing

the state mandated salary for 9 months plus proportionate compensation for the additional months."

He, therefore, prayed the court to compel the defendant to tender him a professional employees' contract which, if it was to be for a term of more than nine months, should make provisions for proportionate compensation covering the additional time. In addition, he claimed compensation for extra services rendered beyond the announced nine-month period dating back to 1946-47, for a total of $9,166.41 plus $200, which the plaintiff said was withheld "out of the mandated salary for 1959-60, together with interest thereon."

The defendant filed preliminary objections asserting that the plaintiff has no legal contract with either the defendant or the School District of Canonsburg showing his status to be other than that of teacher; that he has no legal status as a principal; and that to the extent Taggart is a principal he is not entitled to additional compensation for the services rendered in a supervisory capacity. The defendant averred further that the plaintiff was guilty of laches. The court sustained the preliminary objections, dismissed the complaint, and entered judgment for the defendant. The plaintiff appealed.

Is Taggart a teacher or principal? The status of a school employee is fixed by his contract. The requisites of an effective contract were spelled out in *Com. ex rel. Ricapito v. Bethlehem S. Dist.*, 148 Pa. Superior Ct. 426, approved in *Spigelmire v. N. Braddock Sch. Dist.*, 352 Pa. 504, namely: "Two things must enter into the creation of a valid and enforceable teacher's, or professional employe's contract. (1) The appointment must be made and the salary fixed by the affirmative vote of the majority of all the members of the board of school directors, duly recorded on the minutes, showing how each member voted. (2) A contract must be duly signed by the teacher and executed by the presi-

dent and secretary on behalf of the board, drawn in strict compliance with the action taken by the board and the provisions prescribed by the School Code and its amendments: Hawkins' Petition, 129 Pa. Superior Ct. 453, 195 A. 761. If either of these is lacking, there is no valid, enforceable contract." (Citing many cases).

Taggart has no contract with the board as a principal. The contract signed on May 2, 1938 refers to Taggart as a vice-principal but it is essentially a teacher contract. It guaranteed him tenure status as a teacher and not as a principal.

In *Commonwealth ex rel. Ricapito v. Bethlehem S. District,* supra, the plaintiff, beginning with 1927, had been employed as instructor of instrumental music, holding a professional employee's contract to teach. In 1939 he was informed by the secretary of the school board of Bethlehem that he had been elected " '. . . assistant principal of Liberty High School with the title of "dean" for the school year 1939-1940 at a salary of $420 a year or $35 a month.' " In 1940 he was notified that he would no longer be assistant principal and dean. He brought suit in mandamus to compel the school district to pay him as assistant principal and dean. The Superior Court held that his appointment as assistant principal was to a "non-mandated office" in that it was "not included within the category of 'professional employes' as defined in section 1201 of the School Code, as amended by the Act of 1939." The Court said: "The fact that the resolution appointing him 'assistant to the principal', or 'assistant principal', of a *high school,* designated as 'Dean of Liberty High School', merely added to his duties as teacher of music, (a 'professional employe'), the exclusive charge of discipline in the school, for which added service he was to receive $420 a year, shows that he was not to be classed as a 'principal', within the term 'professional employe' as defined in the act; for the minimum an-

nual salary of a high school principal in second class school districts, who devotes one-half or more of his time to supervision and administration, is three thousand dollars, Act of May 23, 1923, P. L. 328, sec. 1, 24 P.S. §1168. Appellant had received notice from the Secretary of the Board, (Ex. 30) that his appointment as assistant principal, with the title of 'dean', for the school year 1939-1940, carried with it a salary of only $420 a year . . .

"The action of board on June 21, 1939, authorized an additional contract not embraced within the 'professional employes' contract prescribed by the Teachers' Tenure amendments, providing for additional duties to be performed by him, under the title, assistant to the principal, assistant principal, or dean, for which he would receive a salary of $420 a year."

The Court said further that the additional title and work assigned the plaintiff was a temporary expedient, which the board could discontinue if it decided to do so. "It furnished no warrant or authority to the president and secretary to prepare and execute on behalf of the board a professional employe's contract in the form prescribed by statute, fixing appellant's compensation at $3520, so as to increase his salary 'as teacher' to that amount and continue it if and when his duties as assistant to the principal or assistant principal or dean of Liberty High School should be discontinued."

In the case at bar the lower court properly said: "Section 508 of the Public School Code of 1949 requires Board action to appoint a principal and such appointment does not become valid until a new contract has been executed in accordance with the resolution appointing him a principal."

The court also said: "Since the public interest is here involved, the courts have properly held that neither the performance of the duties of a principal nor the payment of the salary of a principal waives the

requirements of a valid written contract. In re Hawkins' Petition, 129 Pa. Superior Ct. 453, 195 A. 761 (1937); Potts v. Penn Township School District, 127 Pa. Superior Ct. 173, 193 A. 290 (1937); Commonwealth ex rel. Ricapito v. Bethlehem School District, supra."

The plaintiff adopts the extraordinary position of being a teacher for certain purposes and principal for other purposes. He deems himself a principal in order to obtain the substantial salary paid for that position, but considers himself a teacher where it comes to performing work beyond the normal schedule of a teacher. The person who aspires to the glory and affluence of officialdom must recognize that in the aura of that elevation the clock and sometimes even the calendar drop out of sight. The principal cannot close his desk or his mind to his responsibilities at the end of a teaching day. Even when the school term has come to an end, the summoning bell has been muted, and the voice of the pupil no longer enlivens the air, the principal still hears and feels the movement of the classes, the hum of the study periods, the chalk-writing on the blackboards, the dropping and gathering of books, because he has the responsibility not only of the day but of the term; not only the problems of the present month, but of the month standing on tiptoe ready to take over.

The principal's work is never fully done, just as a captain of a ship never really sleeps. Of course, with that extra responsibility goes a stipend which exceeds that of the person who has little or no responsibility. The school principal is entitled to great respect, people tip their hats to him, or should; he has an office, he makes out his own schedule, which is all that it should be. The plaintiff wishes all the perquisites, honors and attention which go with a principal's position, but he wants to observe a time-clock schedule and to be paid

additionally for every fragmentary hour he applies to his responsibilities after the blackboard dust of the day has settled. This is not only not fitting from a professional point of view; it is not in accordance with the law. We affirm what the lower court said in this respect: "The plaintiff holds himself out as a member of a learned profession, capable of discharging administrative and supervisory duties at an executive level and receiving a salary substantially in excess of that of a teacher, but at the same time demanding that for purposes of compensation, he be treated as a teacher and nothing more. The plaintiff's position is not reasonable. The length of time required for the proper and efficient performance of the principal's duties during the school year is a matter resting within the sound discretion of the School Board, and that discretion should not be interfered with unless there is a clear abuse. 32 P.L.E. Sec. 3, page 462.

". . . If the plaintiff's contentions are sustained in the instant case, he will be receiving on a monthly basis a salary in excess of that of any other principal in the school system. This will obviously seriously interfere with and possibly even disrupt existing policies of the School Board."

Aside from every other consideration, the plaintiff would not be entitled to the recovery he claims since he slept on his alleged rights in the matter. In June, 1956, he was aware that the school board had no intention of acceding to his demands for extra compensation based on the theory of extra work done. He did not, however, file his complaint in mandamus until five years later. Although the writ of mandamus issues out of the law side of a court of common pleas, the deliberations attending its issuance are guided by the principles of equity. It would be inequitable to impose on taxpayers the extra amounts claimed by the plaintiff when he was indifferent to their rights by his inattentive-

ness to his own claims. Where public moneys are concerned, budgets are prepared and tax levies instituted based on current obligations. The reaching back to present invoices five years overdue could work havoc to any plan for financing so vital and yet so delicately balanced a program as the administration of the public schools of the Commonwealth.

In the case of *Haas v. Llewellyn*, 390 Pa. 469, the plaintiff was discharged from her position as a full-time professional employee but made no demand for reinstatement until more than six years after her employment was discontinued. This Court held she was barred from maintaining an action against the school district because of laches.

Although we are not dealing here with a dismissal from employment the principle of laches applies equally whether the claim be for an alleged lost salary or an alleged lost position. (See also *United States ex rel. Arant v. Lane*, 249 U. S. 367.)

Judgment affirmed.