Mullen *v.* DuBois Area School District, Appellant.

212 

Argued March 19, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

 

*David E. Blakely,* with him *Ammerman & Blakely,* for appellant.

*Edward V. Cherry,* with him *Gleason, Cherry & Guido,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, December 4, 1969:

On May 9, 1967, appellee Mullen was abruptly dismissed by appellant Board of School Directors [Board] from his position as a temporary professional employee of the DuBois Area School District. Following an unsuccessful attempt to have the Board reconsider its decision Mullen brought an action in mandamus seeking reinstatement to his position as a temporary professional employee and related economic damages. In support of his claim Mullen alleged that his dismissal was arbitrary and capricious and that he had no other adequate remedy because his dismissal had made it impossible for him to obtain employment as a teacher in any other school district.

The Board answered that Mullen's dismissal was the result of his unsatisfactory service as a teacher, that he had no valid and enforceable contract with the Board, and that he had other adequate remedies.

The trial court resolved all of the issues in favor of Mullen and ordered both reinstatement and payment of damages. We affirm.

With regard to the quality of Mullen's teaching, we agree with the trial court that ". . . the great weight of credible testimony rests with [Mullen's] position," and that ". . . one can not find but that his dismissal was capricious and arbitrary and that the action was dictated by 'personal and partisan considerations.' "[1]

The testimony clearly demonstrates that Mullen was an entirely competent teacher. Mullen was rated [2] five times during the period in which he taught in the DuBois area schools. On four of these occasions he received ratings indicating entirely satisfactory, and in most instances above average, performance. The only unsatisfactory rating was given on May 5, 1967, four days before his dismissal.[3] It is interesting to note that

---

[1] "The fundamental policy of our public school system is to obtain the best educational facilities for the children of the Commonwealth. To this end must be subordinated all personal and partisan considerations." *Commonwealth v. Sunbury School District*, 335 Pa. 6, 11, 6 A. 2d 279, 281 (1939).

[2] The Public School Code, and specifically those portions set forth in 24 P.S. §11-1108 and §11-1123, provide a system whereby every "temporary professional employee" is to be rated twice each year during the two years that he or she is a "temporary professional employee." The rating is to be done by one of the administrative personnel of the employee's district and is to be completed on forms provided by the Department of Public Instruction and under standards set forth by the Department of Public Instruction. As we noted in the text, Mullen was rated five times during his tenure at DuBois and received eminently satisfactory ratings on four occasions. The first four ratings were completed on inappropriate forms, but that fact is of no relevance.

[3] This rating was itself defective because it was not accompanied by the required anecdotal narrative of Mullen's alleged shortcomings. *Elias v. Bd. of School Directors of Windber*, 421 Pa. 260, 218 A. 2d 738 (1966); *Appeal of Thall*, 410 Pa. 222, 189 A. 2d 249 (1963); *Mulhollen Appeal*, 155 Pa. Superior Ct. 587, 39 A. 2d 283 (1944).

Mullen's principal, who issued the unsatisfactory rating, had previously rated him as excellent or satisfactory in nearly all respects. Additionally, *all* of his fellow teachers and former students who appeared below testified to his being an able teacher. Also of some relevance is the fact that questions concerning Mullen's ability arose only after he became the "building representative" for the DuBois Area Educational Association, in which capacity he found it necessary to press complaints upon the principal and superintendent with regard to their treatment of two fellow teachers.

The evidence clearly supports the trial court's determination that Mullen's dismissal was the result of an arbitrary and capricious exercise of the discretionary power vested in his employers.[4]

The second issue in the case involves the validity of the contract between Mullen and the Board. The Public School Code requires that the hiring of a professional employee be effected by an affirmative vote of a majority of the members of the hiring board duly recorded in its minutes.[5] The Board takes the position that there is no valid and enforceable contract covering

---

[4] It is perfectly clear that a court can review the discretionary acts of a public official and can restrain such officials from exercising their discretion in an arbitrary or capricious manner. See *Travis v. Teter*, 370 Pa. 326, 87 A. 2d 177 (1952).

[5] "The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:

\* \* \*

"Appointing or dismissing . . . teachers.

\* \* \*

"Fixing salaries or compensation of . . . teachers. . . .

\* \* \*

"Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable." 24 P.S. §5-508.

Mullen's employment because there is no recorded vote of the Board with regard to that contract.

The facts concerning Mullen's hiring bear narration at this point. On January 22, 1966, while still a student, Mullen was interviewed by the superintendent of DuBois Area School District. At the close of this interview Mullen signed a document which proclaimed itself to be a contract of employment. The instrument was subsequently signed by the President and Secretary of the Board. The exact nature of the authority given by the Board to the superintendent in hiring teachers is unclear, and their records are less than complete.[6] However, we agree with the trial court's finding that "[i]t is quite clear that the Board did approve the appointment and accepted it. Further, its prior approval was followed by further acceptance of the contract." The Board clearly acquiesced in Mullen's appointment for over a year; at one point he was personally feted at a Board meeting for having received a favorable commendation from the Pennsylvania Department of Public Instruction on the handling of one of his courses.

We agree with the trial court that it would be "not only unconscionable but untenable at law, to maintain that the requirements for a valid and enforceable contract were not met in this case."

We are aware that there is a line of cases giving this statute a very strict construction.[7] To the extent

---

[6] It is not at all certain that *any* of the teachers in the DuBois Area School District have had their contracts approved in the required manner. Query, how many other school districts across the Commonwealth maintain the same "looseness of reporting" as appellant.

[7] See *Taggart v. Canon-McMillan Joint School System*, 409 Pa. 33, 185 A. 2d 332 (1962); *Commonwealth ex rel. Ake v. Blough*, 330 Pa. 590, 200 Atl. 10 (1938); *Commonwealth ex rel. Ricapito v. Bethlehem School District*, 148 Pa. Superior Ct. 426, 25 A. 2d 786

that they interpret the requirement that there be a formal vote recorded in the minutes as being mandatory we overrule them. In a way we are only returning to the interpretation given the predecessor of this statute in the first case which dealt with it. It was there said: "This statute is a valuable one, intended to compel the expression of each individual member of the school board on a subject all-important in the public education, and this for the very purpose of preventing jobbery, and the exercise of a one-man power, in the conduct of our common schools; we are, therefore, not inclined to permit the abrogation of its force and efficiency by a weak construction designed to meet a particular case." *School District of Dennison Township v. Padden,* 89 Pa. 395, 397 (1879).

Neither are we inclined to eviscerate the force of the statute. However, it is clear beyond doubt that the expression of the board members' approval required by the statute can be evidenced in ways other than by a formal vote recorded in the minutes. To allow this does no violence to the purpose of the statute. The overwhelming bulk of evidence in this case indicates that the Board members did in fact approve Mullen's employment. To hold that the lack of a formal vote recorded in the minutes, the presence or absence of which is entirely within the control of the Board, renders this contract null and void, would be to exalt form over substance. What possible value can there be in establishing rigid civil service requirements to protect public employees, if such legislation can be defeated by school board mistakes in the appointive process? We hold the requirement of a formal recorded vote to be directory only, although with the caveat that the proof from which Board approval can be inferred must be solid.

(1942); *McCandless v. Summit Township School District,* 55 Pa. Superior Ct. 277 (1913).

Any result other than the one we reach today would arm every school board in the Commonwealth with a tool by which they could regularly avoid otherwise valid contracts. All they would need do is fail to specifically record in their minutes the required vote; then at their whim, as in this case, a contract could be voided by acknowledgement of the failure. Such a situation is clearly violative of the avowed legislative policy of creating in this state an atmosphere hospitable to school teachers. Our teachers ought not have the burden of being required to know all the statutes relative to their employment. Neither should they have to carefully examine the minutes of their hiring board in order to ascertain that each and every requirement was complied with. The burden of complying with the statute rests with the school boards; should they fail to conduct their business as required, the consequences ought to lie at their door, not at the door of their victims. They must not be permitted to advantage themselves of their own failures to the detriment of their employees.

The third and final question in this appeal is whether mandamus is proper. "Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." *Travis v. Teter,* 370 Pa. 326, 330, 87 A. 2d 177, 179 (1952). This is such a case. The existence of a right in Mullen and a corresponding duty in the Board has been established. The only other condition is the absence of an adequate alternative remedy. None exists. Mullen has not been able to secure other satisfactory employment since his dismissal. We have concluded, as did the trial court, that he is entitled to restoration to his position, damages for lost salary together with any increments to

his salary to which he would have been entitled had he continued in his position, and a certification which would result in his becoming a "permanent professional employee." We can think of no other way in which Mullen could obtain all that to which he is entitled.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I cannot agree with the conclusion of the majority that mandamus will lie in the present case, and accordingly I dissent. As the majority recognizes, mandamus will lie only to compel performance of a ministerial act or a mandatory duty where there is a clear right-duty relationship between plaintiff and defendant. In this case, such a relationship between Mullen and the Board could have been created only by a valid and enforceable contract entitling Mullen to continued employment. Thus, the existence of such a contract is the crucial issue.

The standards for making a valid employment contract between a teacher and a school district are not the usual common law standards; they have been set forth in meticulous fashion by the legislature. The relevant statute is clear and unequivocal: "The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, *shall be required* in order to take action on the following subjects: . . . Appointing or dismissing . . . teachers . . . Fixing salaries or compensation of . . . teachers . . . *Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable*." (Emphasis supplied) Act of September 28, 1951, P. L. 1546, §1, 24 P.S. §5-508. There is no evidence in this case that Mullen's contract was approved by an affirmative recorded vote of a majority of all the members of the School Board. Accord-

ingly, the employment contract in question is void and unenforceable unless the quoted provision is, as the majority concludes, directory in nature.

Whether a particular statutory provision is mandatory or directory is determined by the intent of the legislature as ascertained by a consideration of the statute as a whole. See e.g. *Prichard v. Willistown Twp. School District*, 394 Pa. 489, 147 A. 2d 380 (1959). The essential difference between mandatory and directory provisions is the effect given to acts performed in violation of the standard set forth: "A mandatory provision is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding." *Deibert v. Rhodes*, 291 Pa. 550, 554-55, 140 Atl. 515 (1928); *Pleasant Hills Borough v. Carroll*, 182 Pa. Superior Ct. 102, 125 A. 2d 466 (1956); and *Kowell Motor Vehicle Registration Case*, 209 Pa. Superior Ct. 386, 228 A. 2d 50 (1967). In the present case, the legislature has prescribed that failure of a board to adhere to the statutory procedures for the appointment of teachers shall render such acts void and unenforceable. I can imagine no way in which the legislature could have better or more categorically expressed its intent that these procedures were to be considered mandatory than to provide exactly as it did, viz., that acts not in compliance with such procedures were to be void and unenforceable.

Secondly, it should be noted that the statutory requirement of a properly recorded affirmative vote of a majority of the members of the school board on the appointment of a teacher has been on the books of the Commonwealth for over one hundred years. Originally it was embodied in Section 4 of the Act of April 11, 1862, P. L. 472. *School District of Dennison Township v. Padden*, 89 Pa. 395, 397 (1879). It was re-enacted

by the Act of May 18, 1911, P. L. 309, Article IV, Section 403. *Jackson v. Conneautville Borough School District*, 280 Pa. 601, 125 Atl. 310 (1924). Finally, it was retained in The Public School Code of 1949, Act of March 10, 1949, P. L. 30, Art. V, §508, as amended, 24 P.S. §5-508. As the majority recognizes, this requirement of the statute has been consistently construed by this and other courts as a mandatory provision. See *Taggart v. Canon-McMillan Joint School System*, 409 Pa. 33, 185 A. 2d 332 (1962); *Commonwealth ex rel. Ake v. Blough*, 330 Pa. 590, 200 Atl. 10 (1938); *Commonwealth ex rel. Ricapito v. Bethlehem School District*, 148 Pa. Superior Ct. 426, 25 A. 2d 786 (1942); *McCandless v. Summit School District*, 55 Pa. Superior Ct. 277 (1913). The legislature chose to reenact this provision in the face of this long-standing judicial interpretation. It is a settled canon of statutory construction that legislative re-enactment of a statutory provision is presumptively a legislative adoption of the judicial interpretation previously given to the language in question. See Statutory Construction Act, Act of May 28, 1937, P. L. 1019, Art. IV, §52(4), 46 P.S. §552(4); *Commonwealth v. Wetzel*, 435 Pa. 468, 257 A. 2d 538 (1969); and *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A. 2d 199 (1963). Particularly in view of this standard, I am unable to accept the view that the provision at hand is, in its intent, merely directory. This Court can overrule its own decisions, as the majority here frankly does; in so doing, however, it effectively negates a valid statutory provision, and that it cannot do.

Finally, it should be noted that the statutory requirement of a recorded affirmative vote applies not only to the appointment of teachers but also to a wide variety of other school board actions, including *inter alia* the dismissal of teachers, the levying and assessment of taxes, the purchase and condemnation of land,

the creation or increase of indebtedness, the establishment of new schools, and the making of contracts where the amount involved exceeds $100. Cases holding the present provision to be mandatory as to these other actions by school boards are numerous. See *Yoder v. School District of Luzerne Twp.*, 399 Pa. 425, 160 A. 2d 419 (1960); In re *Chester School District's Audit*, 301 Pa. 203, 151 Atl. 801 (1930); *Jackson v. Conneautville Borough School District, supra*, and *Matevish v. Ramey Borough School District*, 167 Pa. Superior Ct. 313, 74 A. 2d 797 (1950). I see no ground upon which we could logically find the affirmative recorded vote requirement mandatory as to some board actions and directory only as to other actions. While this case is decided on its own facts, it seems inevitable that the decision may have unwanted consequences in other areas.

Nothing I have here said is intended to condone in any way the negligent, or even improper, conduct of the School Board in the situation before us. Moreover, I recognize that certain problems of policy are inherent in a statute which subjects the substantive rights of one party to a second party's faithful observance of procedural requirements. But the choice of such a procedure is within the province of the legislature, and the legislature in providing for such a procedure in the present case spoke with unmistakable clarity. For this Court to hold that the words "void and unenforceable" mean "valid and enforceable" is, in my view, judicial legislation unwarranted by even the hard facts of this case.

Mr. Justice JONES joins in this dissent.