Catherine M. DUSMAN

v.

The BOARD OF DIRECTORS OF the CHAMBERSBURG AREA SCHOOL DISTRICT and the Chambersburg Area School District, Appellants.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2014.
Decided Jan. 6, 2015.
Publication Ordered April 13, 2015.

Michele J. Mintz, Huntingdon Valley, for appellants.

John M. Sharpe, V, Chambersburg, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge P. KEVIN BROBSON.

The Board of Directors of the Chambersburg Area School District (the Board) and the Chambersburg Area School District (the District) (collectively, CASD) ap-

peal from an order of the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Branch (trial court), granting Catherine M. Dusman's (Dusman) motion for peremptory judgment. For the reasons discussed below, we affirm.

During a school board meeting on August 25, 2005, the Board appointed Dusman as Assistant Superintendent for Elementary Services for a four-year term—August 23, 2005 to August 22, 2009. Two years later, on September 26, 2007, Dusman and the Board executed a written contract (2007 contract), which provided that Dusman's initial four-year term started August 1, 2004, and ended July 31, 2008, terms different from those set at the August 22, 2005 school board meeting. That same day, Dusman's contract was listed for approval on the school board's agenda for the evening. The minutes of that meeting record that "Senior Management Contracts as presented" were approved by the seven members of the Board present at the meeting, and that "[c]opies of the contracts are attached to and hereby become a part of this set of minutes." (Reproduced Record (R.R.) 185a.)

Consistent with Section 1077(b) of the Public School Code of 1949 (Public School Code),[1] the 2007 contract provided for automatic renewal unless the Board gave Dusman 150 days' notice of its intent not to renew her contract:

tendent that the board intends to retain him for a further term of three (3) to five (5) years or that another or other candidates will be considered for the office. In the event that the board fails to take such action at a regular meeting of the board of school directors occurring at least one hundred fifty (150) days prior to the expiration date of the term of office of the assistant district superintendent, he shall continue in office for a further term of similar length to that which he is serving.

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 10–1077(b). Section 1077(b) provides:

At a regular meeting of the board of school directors occurring at least one hundred fifty (150) days prior to the expiration date of the term of office of the assistant district superintendent, the agenda shall include an item requiring affirmative action by five (5) or more members of the board of school directors to notify the assistant district superin-

The District shall notify Assistant Superintendent no later than one hundred fifty (150) days prior to the expiration date of this Agreement of the District's intent not to reappoint Assistant Superintendent. Should Assistant Superintendent not be so notified, said Assistant Superintendent shall be appointed for a term of years not less than the length of the expiring term and the terms and conditions of this Agreement shall be incorporated in a Successor Agreement, unless mutually agreed otherwise by the Board and Assistant Superintendent.

(R.R. 18a–19a.)

The Board took no further action regarding Dusman's appointment until March 25, 2009, when it approved a resolution (2009 resolution) renewing Dusman's appointment for another four-year term, from August 23, 2009 to August 22, 2013. (R.R. 24a, attached to Dusman's amended complaint as Exhibit B.) Dusman asserts that a second written contract was executed in 2009 (2009 contract), setting her term from July 1, 2009 to June 30, 2013. Dusman attached an unsigned copy of the 2009 contract to her amended complaint as Exhibit C. (R.R. 25a–32a.) CASD claims the 2009 contract was never executed. The unsigned 2009 contract contains an automatic renewal provision identical to the one in the 2007 contract.

On March 13, 2013, the Board passed a resolution (2013 resolution) abolishing the position of assistant superintendent for elementary services and, therefore, electing not to renew Dusman's contract as assistant superintendent. The 2013 resolution also created the position of Director

of Early Childhood Education and appointed Dusman as Director. (R.R. 156a.) The next day the Board notified Dusman that the District did not intend to retain her as assistant superintendent for another term.

Dusman then filed a praecipe for a writ of summons on May 23, 2013, and a complaint in mandamus on June 3, 2013, to compel CASD to reinstate her as assistant superintendent. On July 2, 2013, Dusman filed an amended complaint. CASD filed an answer and new matter to Dusman's amended complaint on February 6, 2014. Dusman filed her motion for peremptory judgment on February 27, 2014, and brief in support of said motion on March 31, 2014, seeking immediate reinstatement to her position as assistant superintendent on the basis that CASD failed to provide her with the required 150 days' notice before terminating her position. CASD filed a response in opposition to the motion for peremptory judgment on March 25, 2014. On April 2, 2014, CASD filed a petition for leave to file an amended answer with new matter (petition to amend). On April 30, 2014, Dusman filed a response, opposing CASD's petition to amend. Without ruling on the petition to amend, the trial court issued an opinion and order dated April 28, 2014, granting Dusman's motion for peremptory judgment and ordering her reinstatement as assistant superintendent.

In its opinion, the trial court determined that CASD had admitted, by operation of Pennsylvania Rule of Civil Procedure 1029(b) and (c), the material averments contained in paragraphs 5, 8, 9, 12 and 15 of Dusman's amended complaint.[2] The trial court adopted Dusman's argument:

---

2. Paragraph 5 states:

As a result of such board action, on or about September 27, 2007, Cathy entered a written contract with CASD with a commencement date of August 1, 2004 and a term through July 31, 2008. This contract contains an integration clause superseding all prior oral and written agreements and representations. A true and correct copy of that contract ... is attached hereto as Exhibit A and hereby incorporated herein by reference.

Unless some subsequent agreement changed Cathy's contractual relationship with CASD, the [2007 contract] would continue to govern by statute, and her term automatically renew unless terminated. Because no action was taken on her position, under 24 P.S. § 10–1077(b), as well as the [2007 contract], it renewed

(R.R. 13a.) The Board's response: "No response to the averments of paragraph 5 of the Amended Complaint is necessary in that the document speaks for itself." (R.R. 37a.)

Paragraph 8 states:

Because of the board action, as well as board and administrative policy, on information and belief, the CASD solicitor prepared a new contract, which Cathy approved, aligning her contract term to the same date range as every other administrator in CASD from July 1 to June 30. The contract was to be effective from July 1, 2009 for four years ending June 30, 2013. A true and correct copy of that contract ... is attached hereto as Exhibit C and hereby incorporated herein by reference. The 2009 contract does reflect the contractual terms, including a change in payment terms, under which she and CASD have operated since July 1, 2009, although she has never seen a copy signed by CASD.

(R.R. 13a.) The Board's response:

Proof of the averments of paragraph 8 of the Amended Complaint is demanded. After reasonable investigation, Defendants are without knowledge sufficient to form a belief as to the truth of said averments and strict proof thereof at trial is demanded. To the extent that paragraph 8 of the Amended Complaint refers to a document, said document speaks for itself.

(R.R. 38a.) Paragraph 9 states:

Cathy does not have a signed copy of the 2009 Contract as that document is in the sole control of CASD and, despite demand, CASD has refused to produce the signed 2009 Contract to either Cathy or her duly authorized counsel, but has instead disavowed its existence. Based upon the existence of the attached 2009 Contract, but the failure of CASD to provide a signed copy, Cathy draws the inference that either the 2009 Contract was lost through misfeasance or malfeasance, as the existence of that contract is contrary to CASD's actions with respect to renewal of her position as assistant superintendent. Despite request on May 10, 2013, Cathy's authorized representative has been denied inspection of her personnel file as guaranteed by [the Inspection of Employment Records Law, Act of

November 26, 1978, P.L. 1212, *as amended,*] 43 P.S. § 1322.

(R.R. 13a–14a.) The Board's response:

Proof of the averments of paragraph 9 of the Amended Complaint is demanded. After reasonable investigation, Defendants are without knowledge sufficient to form a belief as to the truth of said averments and strict proof thereof at trial is demanded. To the extent that paragraph 9 of the Amended Complaint refers to a document, said document speaks for itself.

(R.R. 38a.) Paragraph 12 states: "Cathy has a direct interest in this action inasmuch as the CASD action constituted an involuntary demotion and deprives her of her ability for advancement and promotion, although this Honorable Court's jurisdiction is limited to determining whether CASD correctly acted within 150 days under 24 P.S. § 10–1077."

(R.R. 14a.)

The Board's response:

Proof of the averments of paragraph 12 of the Amended Complaint is demanded. After reasonable investigation, Defendants are without knowledge sufficient to form a belief as to the truth of said averments and strict proof thereof at trial is demanded. To the extent that paragraph 12 of the Amended Complaint refers to a document, said document speaks for itself. To the extent that paragraph 12 of the Amended Complaint contains legal conclusions, no response to the same is required.

(R.R. 39a.) Paragraph 15 states: "On information and belief, the position of assistant superintendent still exists in CASD, and Cathy's responsibilities merely were re-assigned to other persons within CASD so that the Court has the power to reinstate her to the office of assistant superintendent." (R.R. 15a.)

The Board's response:

Proof of the averments of paragraph 15 of the Amended Complaint is demanded. After reasonable investigation, Defendants are without knowledge sufficient to form a belief as to the truth of said averments and strict proof thereof at trial is demanded. To the extent that a response may be required, said averments are denied.

(R.R. 39a.)

until July 31, 2012. Then, since no action was taken 150 days before July 31, 2012, on her position, her term again automatically renewed until July 31, 2016. Only the 2009 Contract would create a novation and change her term, to run for a different term. CASD could not unilaterally make any changes to Cathy's term by vote or resolution in either 2009 or 2013. Hence, the [2009 resolution], which CASD admits was not negotiated with Cathy, ... could not vary Cathy's term of office set by the [2007 contract]. If there ·is no 2009 Contract, as CASD asserts, then Cathy's term of office did not end in 2013, and her position could not be terminated by any CASD action in 2013.

(R.R. 238a–39a.) The trial court reasoned that

> while there may be issues of material fact as to the effect of the purported 2009 contract on the [2007] contract these facts will only determine the end date of the contract term. These issues do not affect the [trial court's] determination that the District was bound by one contract or another and had failed to provide the required 150 day notice required to terminate· either one of those contracts.

(R.R. 239a.) The trial court also concluded that CASD abandoned its defenses to the validity of the 2007 contract by failing to specifically argue the defenses in its brief in opposition to peremptory judgment, stating that the defenses "have no application" to the motion for peremptory judgment. (R.R. 240a.) Thus, the trial court granted Dusman's motion. CASD appealed the trial court's order granting peremptory judgment.[3]

On appeal,[4] CASD raises five issues: (1) the trial court erred as a matter of law when it concluded Dusman's term did not end on August 22, 2013, because (a) her term can only be set by a vote of the Board and (b) the contracts are not valid because they were not approved pursuant to Section 508 of the Public School Code;[5] (2) the trial court erred as a matter of law when it determined the responses contained in paragraphs 8, 9, 12, and 15 of CASD's answer and new matter were ad-

---

3. Pursuant to Pennsylvania Rule of Civil Procedure 1736(b), the appeal filed by CASD operated as an automatic supersedeas in favor of the Board and CASD. On May 22, 2014, Dusman filed an application to vacate the automatic supersedeas. CASD filed a response in opposition on June 6, 2014. In an opinion and order dated June 30, 2014, the trial court granted Dusman's motion and ordered CASD to take immediate and appropriate action to reinstate Dusman to the position of assistant superintendent. In an order dated August 26, 2014, this Court denied CASD's application to restore automatic supersedeas and that issue is not currently before the Court.

4. Our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Aiken v. Radnor Twp. Bd. of Supervisors*, 83 Pa. Cmwlth. 190, 476 A.2d 1383, 1386 (1984).

5. 24 P.S. § 5–508. Section 508 of the Public School Code provides:

> The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:—
> ...
> Appointing or dismissing district superintendents, assistant district superintendents....
> ...
> Entering into contracts of any kind....
> Fixing salaries or compensation of officers, teachers, or other appointees of the board of school directors.
> ...
> Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforcible.

missions;[6] (3) the trial court abused its discretion in granting Dusman's motion for peremptory judgment without first considering CASD's petition for leave to file an amended answer; (4) the trial court erred in determining that CASD abandoned its defenses to the validity of the 2007 contract; and (5) the trial court erred as a matter of law when it granted peremptory judgment in favor of Dusman while simultaneously acknowledging the existence of material issues of fact.

 "Mandamus is an extraordinary writ and is a remedy used to compel performance of a ministerial act or a mandatory duty." *Council of City of Philadelphia v. Street*, 856 A.2d 893, 896 (Pa.Cmwlth. 2004), *appeal denied*, 583 Pa. 675, 876 A.2d 397 (2005). Mandamus will issue only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and no other adequate remedy. *Shaler Area Sch. Dist. v. Salakas*, 494 Pa. 630, 432 A.2d 165, 168 (1981). Peremptory judgment may be entered at any time after the filing of the complaint if the plaintiff's right to judgment is clear. Pa. R.C.P. No. 1098.

 CASD first argues that the trial court incorrectly concluded Dusman's term did not end on August 22, 2013. CASD asserts that, "pursuant to the Public School Code[,] the term of an Assistant Superintendent is set by a majority vote of a school board at a public meeting, not by unapproved contract documents." (CASD Br. at 17.) CASD argues that a majority vote of the school board is the sole means by which an assistant superintendent's term may be set, and that, consequently, both the 2007 and 2009 contracts are completely irrelevant to determining when Dusman's term ends.[7]

We find CASD's argument unpersuasive. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). Furthermore, "sections of a statute must be construed with reference to the entire statute and not apart from their context." *Snyder v. Dep't of Transp.*, 64 Pa.Cmwlth. 599, 441 A.2d 494, 496 (1982).

Section 508 of the Public School Code requires an "affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted" in order to appoint or dismiss an assistant superintendent. 24 P.S. § 5–508. As to the term of an assistant superintendent, Section 1077(a) of the Public School Code provides:

> Assistant district superintendents may serve through the term of the district superintendent, or enter a contract for a term of three to five years at salaries paid by the district, and fixed by a majority vote of the whole board of school directors prior to their election. The contract shall be subject to the act of February 14, 2008 (P.L. 6, No. 3) known as the "Right–to–Know Law."

24 P.S. § 10–1077(a).[8] Furthermore, Section 1077(b) of the Public School Code

---

6. CASD does not challenge the trial court's determination that it admitted the averments in paragraph 5 of the amended complaint.

7. CASD purports to base this argument on Section 1077(b), but that section does not address setting an assistant superintendent's term, rather, it deals with renewal of a term.

We will, therefore, assume they meant Section 1077(a), which does address setting an assistant superintendent's term.

8. We note that the General Assembly has recently amended the Public School Code to require written employment contracts for as-

requires a school board to inform an assistant superintendent, at least 150 days prior to the end of her term, whether the school board intends to reappoint her. Failure to do so results in an automatic renewal of the assistant superintendent's term. 24 P.S. § 10–1077(b).

In sum, the Public School Code requires an affirmative vote by a majority of the school board to both appoint (24 P.S. § 5–508) and set the term for (24 P.S. § 10–1077(a)) an assistant superintendent. The term of an assistant superintendent coincides with that of the superintendent, unless the term is otherwise set by a contract. 24 P.S. § 10–1077(a). Regardless of whether the assistant superintendent's term is set by contract or follows the term of the superintendent, the school board is required to take action at least 150 days prior to the end of that term to either renew the term or dismiss the assistant superintendent. 24 P.S. § 10–1077(b). If the school board does not take any action, the assistant superintendent's term will automatically renew. 24 P.S. § 10–1077(b).

Turning to this case, the undisputed facts provide that the Board appointed Dusman as assistant superintendent, by majority vote of the Board, on August 23, 2005. (R.R. 134a–36a.) The Board and Dusman entered into a contract on September 26, 2007, and the Board approved, by a majority vote, the contract that same day. (R.R. 16a–23a; R.R. 183a–88a.) The 2007 contract set Dusman's term as August 1, 2004 to July 31, 2008. (R.R. 16a.) The 2009 contract provides for a term from July 1, 2009 to June 30, 2013. (R.R. 25a–32a.) Thus, we conclude that although CASD may not have been required to enter into a contract with Dusman in 2005 or 2009, it is clear that Dusman's term *could* be set by contract if CASD so chose and if it was approved by the Board. Thus, the provision of Dusman's employment contract setting her term as assistant superintendent is relevant to the issue of whether CASD provided Dusman with sufficient notice of its decision to eliminate her position.

■ We are likewise unpersuaded by CASD's argument that the 2007 contract is invalid because it was not approved by the Board in accordance with Sections 508 and 1077(a) of the Public School Code.[9] Dusman's contract was listed for approval on the Board's agenda for the September 26, 2007 meeting. (R.R. 187a–88a.) The minutes of that meeting record that "Senior Management Contracts as presented" were approved by seven members of the Board and that "[c]opies of the contracts are attached to and hereby become a part of this set of minutes." (R.R. 185a.) The copy of the minutes included in the record, however, contains no attached contracts. (R.R. 183a–85a.) CASD argues the fact the contract is not attached indicates the contract was not approved.

Failure on the part of CASD to attach the 2007 contract to the minutes of the Board meeting will not invalidate the contract. *See Mullen v. Bd. of Sch. Dirs. of DuBois Area Sch. Dist.,* 436 Pa. 211, 259 A.2d 877, 880 (1969). In *Mullen,* our Supreme Court considered the question of

sistant superintendents. Act of July 12, 2012, P.L. 1142, amending Section 1073 of the Public School Code, 24 P.S. § 10–1073(e)(1) ("Notwithstanding any other provision of law, no individual shall be employed as a district superintendent or assistant district superintendent by a school district except pursuant to

a written contract of employment expressly stating the terms and conditions of employment."). Because this amendment was not added until 2012, it is not controlling here, where the relevant time period is 2005–2009.

**9.** 24 P.S. §§ 5–508, 10–1077(a).

whether failure to record a vote of a school board approving Mullen's contract to teach rendered the contract invalid and unenforceable. The Supreme Court noted that the statute had previously been given a very strict construction, but overruled those cases "[t]o the extent that they interpret the requirement that there be a formal vote recorded in the minutes as being mandatory." *Id.* The Supreme Court reasoned:

it is clear beyond doubt that the expression of the board members' approval required by the statute can be evidenced in ways other than by a formal vote recorded in the minutes.... To hold that the lack of a formal vote recorded in the minutes, the presence or absence of which is entirely within the control of the Board, renders this contract null and void, would be to exalt form over substance.

... The burden of complying with the statute rests with the school board; should they fail to conduct their business as required, the consequences ought to lie at their door, not at the door of their victims. They must not be permitted to advantage themselves of their own failures to the detriment of their employees.

*Id.* at 880–81. Thus, the Court held "the requirement of a formal recorded vote to be directory only, although with the caveat that the proof from which Board approval can be inferred must be solid." *Id.* at 880.

In this case, the Board has twice approved Dusman to serve as assistant superintendent, executed a contract which was signed by both the President and Secretary of the Board, listed her contract for approval at a board meeting, and recorded in the minutes of that meeting that "Senior Management Contracts" were approved as presented. In light of *Mullen,* the fact that Dusman's contract was not attached as specified in the minutes does not render the contract invalid, especially considering that it was the duty of the Board to attach the contract. Moreover, the fact that the minutes have no attachments suggests that the Board failed to attach any of the approved contracts, not that the Board did not approve Dusman's contract.[10]

■ CASD next argues that the trial court erred in determining that CASD's responses in its answer to the amended complaint were admissions. CASD argues that each of the deemed admissions is meant to be a denial and operated as a denial under Pennsylvania Rule of Civil Procedure 1029(c). Furthermore, CASD argues that even if any of the responses might constitute an admission in isolation, when the answer is considered as a whole, it is clear they were denials.

■ Rule 1029 provides: "A statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial." Pa. R.C.P. No. 1029(c). Thus, CASD's responses would appear to be denials under this rule. The note to Rule 1029(c), however, states that "[r]eliance on subdivision (c) does not excuse a failure to admit or deny a factual allegation when it is clear that the pleader must know whether a particular allegation is true or false." *Id.* (citing *Cercone v. Cercone,* 254 Pa.Super. 381, 386 A.2d 1 (1978)); *see also City of Philadelphia v. A.B.C. Express Co.,* 84 Pa.Cmwlth. 1, 478 A.2d 527, 528 (1984) ("Rule [1029(c) ] cannot be invoked if the averment in the complaint is

10. We note the existing factual dispute regarding the execution of the 2009 contract, which the trial court did not decide, and take no position on whether the 2009 contract, if executed, would be valid under *Mullen.*

one which the person answering must know to be true or false."). The trial court deemed the averments in paragraphs 8, 9, 12, and 15 to be admitted pursuant to the note to Rule 1029(c) and *Cercone,* because it concluded such information must be within CASD's knowledge. We disagree. It is not so clear from what little record exists in this case that information at issue in these paragraphs must be in possession of CASD, such that its responses constitute ineffectual denials under *Cercone.* Furthermore, even if the responses may appear to be ineffective denials when viewed in isolation, we must look to the entire answer to determine if the pleading as a whole supports a conclusion that these paragraphs were admissions. *Kappe Assocs., Inc. v. Aetna Cas. & Sur. Co.,* 234 Pa.Super. 627, 341 A.2d 516, 519 (1975). Reading CASD's answer as a whole, it is apparent the responses were not intended to be admissions, and, given CASD's other denials and its asserted defenses in new matter, it would be inconsistent to conclude CASD made these admissions. We, therefore, conclude that CASD's responses to paragraphs 8, 9, 12, and 15 are valid denials. This, however, appears to be harmless error and not a basis for reversal, as the trial court's determination was not dependent upon those responses.

▮ CASD next argues that the trial court abused its discretion when it granted peremptory judgment before ruling on CASD's petition to amend. CASD asserts that the trial court overrode or misapplied the law when it ruled on the motion for peremptory judgment before ruling on CASD's petition to amend, because amendments to pleadings should be liberally allowed and the trial court relied upon the admissions it found in paragraphs 8, 9, 12,

and 15. It is well established that a motion for peremptory judgment .may be granted at any time after the filing of the complaint, "without the filing of an answer and even without disposing of outstanding preliminary objections." *Philadelphia Suburban Water Co. v. Dep't of Transp.,* 36 Pa.Cmwlth. 8, 387 A.2d 501, 505 (1978). It is equally well established, however, that pleadings may be amended at the discretion of the trial court and that "amendments to pleadings will be liberally allowed to secure a determination of cases on their merits." *Capobianchi v. BIC Corp.,* 446 Pa.Super. 130, 666 A.2d 344, 346 (1995), *appeal denied,* 544 Pa. 599, 674 A.2d 1065 (1996); *see also Mistick, Inc. v. City of Pittsburgh,* 166 Pa.Cmwlth. 294, 646 A.2d 642, 644 (1994). CASD's amended answer purported to provide only more specific denials of Dusman's factual averments. To the extent that the trial court's failure to rule on CASD's petition to amend its answer could be considered an abuse of discretion, it would constitute harmless error because we consider CASD's original responses to be sufficient denials, such that the amendment CASD sought was not necessary or material.

▮ In its second to last argument, CASD asserts that the trial court erred in concluding that CASD abandoned its defenses to the validity of the 2007 contract [11] when it failed to raise explicitly those defenses in its response and motion in opposition to peremptory judgment. In its answer to Dusman's complaint, CASD asserted several affirmative defenses to the 2007 contract, including mutual mistake, frustration of purpose, superseding impracticability of performance, and illegality. (R.R. 39a.) It is clear from CASD's explanation of these defenses that

---

11. As we have previously noted, the 2009 contract contained in the record is not signed, and the trial court made no decisions regarding its validity. We will, therefore, focus on the 2007 contract in addressing this argument.

each relates to the August 1, 2004 start date of the 2007 contract. At best, these defenses call the start date of the 2007 contract into question. The start of Dusman's contract, however, is not at issue-the end date is. None of the asserted defenses call the end date into question, and even if the start date is invalid, it would not invalidate the entire contract. There is, therefore, no material issue of fact regarding the 2007 contract's validity, and any error on the part of the trial court in failing to address these defenses would also be harmless error.

■■■ Lastly, CASD argues that the trial court erred in granting peremptory judgment while simultaneously acknowledging that genuine issues of fact exist. When determining whether to grant peremptory judgment, a court is guided by the standards governing summary judgment. *Wolgemuth v. Kleinfelter*, 63 Pa. Cmwlth. 395, 437 A.2d 1329, 1331 (1981). Accordingly, "peremptory judgment is appropriately entered only where there exists no genuine issue of material fact, and where the case is clear and free from doubt." *Shaler*, 432 A.2d at 168. Peremptory judgment "should not be granted except in the clearest of cases where there is not the least doubt as to the absence of a triable issue of material fact." *Aiken*, 476 A.2d at 1388. A factual issue is considered 'material' for peremptory judgment purposes "if its resolution could affect the outcome of the case under the governing law." *Strine v. Commonwealth*, 586 Pa. 395, 894 A.2d 733, 738 (2006) (defining material issues of fact for summary judgment motions). In this case, the issue of material fact identified by the trial court and CASD is the lingering question of which contract is controlling. This factual issue, however, will not preclude the grant of peremptory judgment because, under either contract, the 150 day notice of intent not to renew Dusman's contract was not satisfied. Thus, the resolution of this lingering question will not affect the outcome of the case, and the issue is not considered "material" for purposes of peremptory judgment. The trial court, therefore, did not err in granting peremptory judgment.

For the reasons discussed above, we affirm the trial court's grant of peremptory judgment.

### ORDER

AND NOW, this 6th day of January, 2015, the order of the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Branch is hereby AFFIRMED.