Commonwealth of Pennsylvania, Department of Education and Carroll Bittner *v.* Jersey Shore Area School District, Appellant.

Argued February 3, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Clyde Carpenter, Jr.*, with him *Carpenter & Carpenter*, for appellant.

*William A. Hebe*, with him *Spencer, Gleason & Hebe*, for appellee, Bittner.

*Edward A. Miller,* Assistant Attorney General, for appellee, Commonwealth.

*William Fearen,* with him *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE WILKINSON, March 9, 1976:

The issue presented by the instant appeal is whether the teacher involved was a professional employee at the time she was notified that her employment was terminated. If she was a professional employee, then admittedly the required procedure to effect her suspension or dismissal was not followed and the decision of the Secretary of Education would be affirmed. If she was not a professional employee, then the Secretary's position was incorrect and his decision must be reversed. After a careful review of the record and the law, we must hold that she was not a professional employee and, therefore, must reverse the Secretary.

This teacher was engaged by the district superintendent to teach in what she described as "the E.S.E.A. reading program, full time." This was described as "a specialized type of reading program funded by the Federal Government." As clearly shown by the teacher's evidence and as found by the Secretary, the teacher did not have a "contract," by which we assume both the teacher and the Secretary mean a "written contract."[1] The narrow holding that we make on the complicated facts of this case is that one cannot acquire professional status as a school teacher in the Commonwealth of Pennsylvania without having first obtained a written contract to teach, which written contract has been approved by a majority of the school board.

---

1. While it is not controlling, it is worth noting that in the instant case, the teacher testified that she thought she should have a written contract and was concerned sufficiently to speak to her former professors, but did not mention it to the school officials or to any member of the Board.

This case is controlled by our recent decision in *Gordon v. Board of Directors of West Side Area Vocational Technical School,* 21 Pa. Commonwealth Ct. 616, 347 A.2d 347 (1975), decided on November 14, 1975, well after the Secretary's decision in this case on June 25, 1975. *Gordon,* by its express language, clearly stands for the proposition that:

"Accordingly, public school teacher contracts must be in writing and approved by a majority of the school board to be valid and enforceable." 21 Pa. Commonwealth Ct. at 619, 347 A.2d at 349.

Section 1121 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, *as amended,* 24 P. S. §11-1121, reads:

"In all school districts, *all contracts with professional employes shall be in writing,* in duplicate, and shall be executed on behalf of the board of school directors by the president and secretary and signed by the professional employe." (Emphasis added.)

Section 508, 24 P.S. §5-508, provides:

"The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:

. . . .

"Appointing . . . teachers.

. . . .

"Entering into contracts of any kind . . . where the amount involved exceeds one hundred dollars ($100).

"Fixing salaries or compensation of . . . teachers. . . .

. . . .

"Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable."

As we pointed out in *Gordon, Mullen v. DuBois Area School District,* 436 Pa. 211, 259 A.2d 877 (1969), does not stand for the proposition that a written contract is not necessary. Indeed, the only requirement of the statute quoted above that was held directory rather than mandatory in *Mullen* is the requirement that the board's approval be indicated by a minute showing how each member voted. In *Mullen,* there was a written contract signed by the president and the secretary of the board. Further, during the year of his employment, Mullen was feted at a board meeting for receiving an award. In the instant case, the only evidence relied on by the Secretary to conclude that the oral contract had board approval was the fact that the teacher was paid. This certainly does not meet the requirement set forth by Justice ROBERTS in *Mullen*:

"We hold the requirement of a formal recorded vote to be directory only, *although with the caveat that the proof from which Board approval can be inferred must be solid."* 436 Pa. at 216, 259 A.2d at 880. (Emphasis added.)

Not only is the fact that the teacher was paid not solid evidence of board approval, but its use as any evidence is directly contrary to President Judge KELLER'S statement and the holding of the Superior Court in *Commonwealth ex rel. Ricapito v. Bethlehem School District,* 148 Pa. Superior Ct. 426, 438, 25 A.2d 786, 792 (1942):

"Payments made under an invalid contract do not estop the school district from defending against the contract *nor amount to a ratification of the invalid contract."* (Emphasis added.)

Accordingly, we enter the following

### ORDER

Now, March 9, 1976, the order of the Secretary of Education, dated June 25, 1975, sustaining the appeal of Carroll Bittner, is reversed and her appeal dismissed.