## TUNKHANNOCK AREA SCHOOL DISTRICT, Appellant

### v.

## TUNKHANNOCK AREA EDUCATION ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued March 16, 2010.
Decided April 13, 2010.

Frank J. Tunis, Jr., Scranton, for appellant.

William A. Hebe, Wellsboro, for appellee.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Tunkhannock Area School District (School District) appeals from an order of the Court of Common Pleas of the 44th Judicial District (Wyoming County Branch) (trial court) denying the School District's petition to vacate an arbitration award in favor of the Tunkhannock Area Education Association (Teachers Association) that found that four School District teachers hired as "special teachers" were covered by the terms of the Collective Bargaining Agreement (CBA).

The facts of this case are not in dispute. The School District received federal grant funds and used those funds to hire four "special teachers"[1] for programs initiated as a result of the receipt of the federal funds. Two of the "special teachers" were hired as Title II teachers, and the other two were hired as Title II Class Size Reduction Teachers. Before commencing their employment, each "special teacher" signed an Agreement of Understanding with the School District that included, *inter alia*, the following terms:

- "special TEACHERS may be terminated at any time by the DISTRICT;"

- "employment of the [special] TEACHERS is directly contingent upon the receipt of Federal Grant monies and

that should the Federal Grant monies be discontinued, the DISTRICT may terminate employment;" and

- "[s]hould the monies be withdrawn for any reason or should the DISTRICT unilaterally determine to terminate the employment, all parties agree that the SUBSTITUTES [that is, special teachers] have no additional employment rights within the DISTRICT. *The parties agree that the SUBSTITUTES are not protected by the terms of the collective bargaining agreement or by any Pennsylvania statutory law dealing with tenured employment rights.*"

(Reproduced Record at 20a–22a, 32a–34a, 42a–44a, 47a–49a, 59a–61a.) (Emphasis added.) Each Agreement of Understanding also stated that the "special teachers" were hired pursuant to Section 1107 of the Public School Code of 1949, 24 P.S. § 11–1107.[2]

Upon learning of the terms of these individual Agreement of Understanding, the Teachers Association filed a grievance seeking to have the "special teachers" retroactively hired as either temporary professional employees or professional employees receiving all the rights and benefits of other members of the collective bargaining unit and made whole from their original date of hire. After the grievance was denied, the matter proceeded to arbitration.

Finding that the School District violated the CBA when it hired the four "special teachers" and failed to provide them with any of the contractual benefits of the CBA,

---

1. The "special teachers" are Ashley Robinson, Marc Marini, Joanne Yanchick and Katina Brown.

2. Act of March 10, 1949, P.L. 30, *as amended* by Act of March 19, 1970, P.L. 189. Section 1107 provides:

The board of school directors in every school district may employ such special teachers, including special teachers who speak the idiomatic or colloquial language of immigrants residing in the school district, for the purpose of easing the transition period of such immigrants, qualified as herein provided, as they may deem necessary for any of the public schools or departments thereof in the district.

the arbitrator decided in favor of the Teachers Association. According to the arbitrator, Section 1101 of the Public School Code[3] provides for only three categories of teachers: professional employees, temporary special employees and substitutes. The arbitrator determined that the "special teachers" in this case clearly were either professional employees or temporary professional employees and must, therefore, have been treated as such. He further determined that they were protected by the CBA, and that any contract that purported otherwise was void. The School District appealed to the trial court.

Applying the "essence test" enumerated in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), the trial court affirmed, finding that the arbitration award was rationally derived from the contract because the "special teachers" were professional employees covered by the CBA, and the CBA trumped the individual Agreement of Understanding. This appeal followed.

■ On appeal, the School District contends that the trial court erred by using the wrong standard of review when it employed the essence test rather than the "contrary to law" test found in Section 7302(d)(2) of the Uniform Arbitration Act, 42 Pa.C.S. § 7302(d)(2). Section 7302(d)(2) provides:

> Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and

is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

The School District argues that in pure matters of law, such as the instant case, the Section 7302(d)(2) test must be applied, while in cases where there are factual disputes, the essence test would apply.

However, our Supreme Court has repeatedly held that only the essence test applies in appeals from public sector grievance arbitration awards. *See, e.g., Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (2007); *Cheyney University; Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Moreover, our Supreme Court has held that the judgment n.o.v./error of law concept set forth in Section 7301(d)(2) is the same as the "essence test." In *Community College of Beaver County*, 473 Pa. at 589–90, 375 A.2d at 1273, it held that the judgment n.o.v./error of law standard and the essence test are essentially the same, stating that "the 'n.o.v.' concept ... is hardly a radical change, nor does it dictate that a much closer or different scrutiny of an arbitration award will be available than under the [essence test]." While that case was decided under the Arbitration Act of 1927, which had a judgment n.o.v. standard but did not expressly apply to public sector collective bargaining agreements as does the Uniform Arbitration Act,[4] our Supreme Court reiterated

3. 24 P.S. § 11–1101.

4. 42 Pa.C.S. § 7302(d)(1) provides that this standard of judicial review should apply where (1) the Commonwealth submits a controversy to arbitration; (2) a political subdivision submits a controversy with an employee or a representative of employees to arbitration; or (3) any person has been required by law to submit or to agree to submit a contro-

that the essence test and the judgment n.o.v. test were the same in *Pennsylvania State Education Assoc. v. Appalachia Intermediate Unit 08*, 505 Pa. 1, 476 A.2d 360 (1984).

■ Even if the essence test applies, the School District then contends that the arbitrator's decision was not rationally derived from the CBA because it was legally incorrect in holding that the teachers must be hired as regular teachers.[5] It argues that Section 1107 of the Public School Code specifically allows school districts to hire "special teachers" and that these special teachers are outside the bargaining unit and exempt from the provisions of collective bargaining agreements. In other words, the issue is not within the terms of the CBA.

The School District's position is untenable for several reasons. First, the School District argues that "special teachers" are not just those teachers hired to ease the transition of immigrants but, in effect, can be any teacher that it labels as "special" when hired. It argues that before the language regarding immigrants was added in 1970, Section 1107 read:

> The board of school directors in every school district in this Commonwealth may employ such special teachers, qualified as herein provided, as they may deem necessary for any of the public schools or departments in the district.

However, what the term "special teacher" meant was not a teacher whom a school district designated as special but a teacher who taught "special classes." *See Marcovitz v. The School District of Philadelphia*, 334 Pa. 206, 5 A.2d 540 (1939) (special teacher taught special class of mentally retarded students). The effect of the 1970 amendment was to include classes of immigrant children as a type of special class, so that teachers who catered to those immigrant children are now also categorized as special teachers. Because the four "special teachers" hired by the School District perform the same functions as the other teachers in the School District, rather than catering specifically to immigrants or teaching some other type of special class, they cannot as a matter of law be special teachers.

■ However, even assuming that the four teachers are "special teachers," they would still be part of the bargaining unit. Any certified teacher who has been employed to perform the duties of a newly created position immediately becomes a "temporary professional employee." Section 1101 of the Public School Code;[6] *Department of Education v. Jersey Shore Area School District*, 481 Pa. 356, 362, 392 A.2d 1331, 1334 (1978). Even though those positions were created as a result of the federal grant monies, the teachers filling them are still part of the bargaining unit and cannot be treated differently because their hire was the result of the re-

---

versy to arbitration pursuant to the statutory arbitration provisions.

5. Under the essence test, the court makes an initial determination as to whether the issue is embraced by the agreement giving the arbitrator the authority to hear the matter. If so, the award is upheld if it can be rationally derived from the agreement, allowing reversal only where the award, genuinely and indisputably, is without foundation in or fails to logically flow from the agreement. The es-

sence test requires a determination of whether the agreement encompasses the subject matter of the dispute. *Cheyney*. In this case, only the first prong of the essence test is at issue because if the "special teachers" are members of the bargaining unit covered by the CBA, a decision that they are entitled to the protections of that CBA is *prima facie* rational.

6. 24 P.S. § 11–1101.

ceipt of federal funds. *Id.; Platko v. Laurel Highlands School District,* 49 Pa. Cmwlth. 210, 410 A.2d 960 (1980). A school district cannot circumvent these requirements merely by dubbing a teacher a "special teacher."[7]

In addition, the School District's argument that the collective bargaining agreement does not apply because the teachers signed an Agreement of Understanding providing that they agreed that they were "substitute teachers and not protected by the terms of the collective bargaining agreement or by any Pennsylvania statutory law dealing with tenured employment rights" is not controlling as a CBA trumps separate individual teacher contracts. As our Supreme Court held over 30 years ago:

> Were appellee's view to prevail, a school district could effectively emasculate any salary scales contained in collective bargaining agreements by entering into individual agreements with each teacher. This is exactly the evil intended to be eliminated by the recognition of exclusive bargaining agents, agents who act for all employees the moment they are hired. As the United States Supreme Court recognized over thirty years ago, to allow individual contracts to interfere with the functioning of the collective bargaining agreement would reduce laws providing for collective bargaining to a futility. *J.I. Case Co. v. NLRB,* 321 U.S. 332, 337 [64 S.Ct. 576, 88 L.Ed. 762] (1944).... A collective bargaining agreement would eventually become ineffective if a district could, over a period of years, hire new teachers, without adhering to the wage salary scale in the collective bargaining agreement.

*Leechburg Area School District v. Leechburg Education Association,* 475 Pa. 413, 419–20, 380 A.2d 1203, 1205–06 (1977). As such, the Agreements of Understanding entered into between the School District and the "special teachers" are null and void.

Because the teachers whose status is the subject of this suit are not special teachers, would be members of the bargaining unit governed by the CBA even if they were, and cannot enter into individual "Agreements of Understanding" contracting away their rights under the CBA, the relationship between these teachers and the School District is within the scope of the CBA. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this *13th* day of *April,* 2010, the order of the Court of Common Pleas of the 44th Judicial District (Wyoming County Branch), dated June 9, 2009, is affirmed.

---

**7.** This analysis is the same as the Pennsylvania Attorney General's Official Opinion No. 40 of 1971, which held that special teachers are professional employees who are to be treated exactly the same as other professional employees. In that opinion, the Attorney General concluded, "Special teachers, as referred to in Section 1107 of the School Code, 24 P.S. § 11–1107, refers specifically to teachers qualified, and any contract is governed by Section 1101 of the Code, as amended, 24 P.S. § 11–1101, relative to professional employees."