# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monroe County Correctional Facility,    :
                              Appellant    :
                                      :
                      v.                  :   No. 1422 C.D. 2018
                                      :   ARGUED: June 3, 2019
Teamsters Local 773               :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED:  June 25, 2019**


The Monroe County Correctional Facility (MCCF) appeals from the order of the Court of Common Pleas of Monroe County (trial court) confirming an Arbitrator's decision and award reducing the discipline imposed on a corrections officer at MCCF, Tyrone Wright (Employee), who falsified a doctor's note in relation to his use of a sick day. The Arbitrator's award reduced the punishment from termination to disciplinary suspension of 30 scheduled work days without pay or benefits and ordered MCCF to reinstate him to his former position.  Employee's discipline was grieved by Teamsters Local 773 (the Union). We affirm.

The facts as found by the Arbitrator are straightforward and not disputed.  Employee was employed as a corrections officer at MCCF beginning in March 2004.   During thirteen years of employment with MCCF, Employee had received discipline one previous time—a five-day suspension in the spring of 2014

for violating a policy involving contraband and violation of the suicide/mental health watch policy.

In April 2017, Employee called in sick and justified the use of a sick day by submitting the falsified doctor's note. Employee had not visited a doctor but altered a copy of a note he had previously obtained from a doctor in 2008. Employee submitted the falsified note in order to avoid an "occurrence" under MCCF's attendance policy even though he was not on the cusp of receiving discipline as a result of the absence. Employee testified that he was going through an emotional time relating to his deceased mother's birthday, and that he had cared for her during the end of her life. Employee's mother died in August 2015. Employee knew of the policies involved and that it was wrong to submit an altered note.

About two and one-half months after submission of the falsified doctor's note, MCCF's Human Resources Director, Bonnie Ace-Sattur, confronted Employee about it. When Ace-Sattur told Employee that she believed the April 2017 note was a falsification based on the note he submitted in 2008, Employee immediately admitted that he had "doctored it up." Asked by Ace-Sattur, "so you committed fraud so you wouldn't get an occurrence?" Employee responded, "yes." MCCF terminated Officer Wright's employment for violating Section 1.45 of the Correctional Facility Employee Manual and Rule of Conduct IV.B, which prohibits falsification of documents and knowingly submitting a false report.

In February 2018, the Arbitrator issued his Decision and Award in favor of the Union, reducing Employee's discharge to a "30 scheduled-work-day unpaid suspension" among other relief. In reaching that decision, the Arbitrator noted that Employee's violation was singular; that Employee was a thirteen-year employee with limited prior discipline; and that MCCF offered only vague explanation as to

2

why lesser discipline would not meet its needs. The Arbitrator further found that MCCF did not offer "a compelling excuse for its lack of fidelity to the remedial goals of progressive discipline." (Arbitrator's Award, R.R. at 20a.) The Arbitrator noted that Employee admitted he was wrong, expressed remorse, and testified that he would not engage in such conduct in the future. The Arbitrator believed Employee was sincere that he would not do so. Further, the Arbitrator discussed the concept of "just cause" as including the principle that policies will be applied consistently between employees. The Arbitrator compared Employee's infraction to another employee who had received a 30-day suspension for second violations of sleeping on the job and falsifying documents, which the Arbitrator deemed more serious than Employee's infraction.

MCCF filed a petition for review and petition to vacate the Arbitrator's award in the trial court. The Union filed an answer to MCCF's petition and a cross-petition to confirm the Arbitrator's award. The parties submitted briefs and argued the matter before the trial court. The parties did not dispute that the award met the "essence test,"[1] but differed as to whether the award violated public policy, an

---

[1] Drawing from federal labor law, our Supreme Court has held that "the arbitration award is legitimate so long as it draws its essence from the collective bargaining agreement." *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 411 (Pa. 1999) (omitting internal quotation marks). Thus, grievance awards under the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301, are reviewed under the deferential essence test, which requires an award to be confirmed if: (1) the issue as properly defined is within the terms of the agreement, and (2) the award can be rationally derived from the agreement. *Fraternal Order of Transit Police v. Se. Pa. Transit* [sic] *Auth.,* 114 A.3d 893 (Pa. Cmwlth. 2014). A reviewing court will not second-guess the arbitrator's fact-finding or interpretation as long as the arbitrator has arguably construed or applied the collective bargaining agreement (CBA). *Id.* We have often equated the essence test with the judgment n.o.v./error of law standard set forth in section 7302(d)(2) of the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7302(d)(2). *Id.; see also Tunkhannock Area Sch. Dist. v. Tunkhannock Area Educ. Ass'n,* 992 A.2d 956, 958 (Pa. Cmwlth. 2010).

3

exception to the essence test. *See Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 865–66 (Pa. 2007).

In September 2018, the trial court denied Employer's petition and granted the Union's cross-petition, confirming the Arbitrator's decision and award. In confirming the Arbitrator's decision and award, the trial court found that public policy would not be undermined if the Arbitrator's award was implemented. MCCF appealed the trial court's order to this Court.

On appeal, though stated a number of ways, MCCF raises what essentially amounts to a single issue:

> Whether the trial court erred in determining that the Arbitrator's award did not violate public policy?

It is undisputed that the trial court correctly found that the Arbitrator's award met the essence test:

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*State Sys. of Higher Educ. (Cheyney Univ.)*, 743 A.2d at 413. However, the parties dispute whether the Arbitrator's award violated the public policy exception to the essence test, "a narrow exception by which an arbitrator's award will be vacated if it is violative of the public policy of the Commonwealth." *Westmoreland Intermediate Unit #7*, 939 A.2d at 865-66. As the party below asserting that the

4

Arbitrator's award contravened public policy, MCCF had the burden of establishing that the award violated positive law. *Pa. Tpk. Comm'n v. Teamsters Local Union No. 250*, 948 A.2d 196, 207 (Pa. Cmwlth. 2008). The determination of whether the award violated public policy is a question of law, subject to our plenary review. *Phila. Hous. Auth. v. Am. Fed'n of State, Cty. and Mun. Emps., Dist. Council 33, Local 934*, 52 A.3d 1117, 1121 (Pa. 2012).

The three-step analysis for application of the public policy exception provides that the Court must (1) identify the nature of the conduct leading to the discipline; (2) determine if that conduct implicates a well-defined and dominant public policy; and (3) determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator. *City of Bradford v. Teamsters Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011). The trial court determined that the first two steps were satisfied and that determination is not challenged, so it is not at issue here.

> With regard to the third step, the inquiry is as follows:
>
> Does the arbitrator's award pose an unacceptable risk that a clear public policy will be undermined if the award is implemented? This question allows for consideration of the particular circumstances of the case and any attendant aggravating or mitigating factors. In short, the three[-] prong test to determine the public policy exception draws the necessary balance between the public employer's duty to protect the health, safety and welfare of the citizens it serves, the fair treatment of public employees and the salutary goal of PERA to insure the prompt resolution of labor disputes in binding arbitration.

*Id.* at 415. The Arbitrator found as mitigating factors that Employee had limited prior discipline, had been an employee of MCCF for thirteen years, had credibly

testified that he would not recommit the offense, and had expressed remorse for his actions. The trial court noted as an aggravating factor that Employee's actions were deliberate, unlike the employee in *City of Bradford*, whose actions were accidental. The trial court also concluded that Employee did not hold a position of public trust, which the trial court deemed to be mitigating.

MCCF first contends that the trial court erred in determining that Employee's job as a corrections officer was not a position of public trust. MCCF argues that prison employees are entrusted with the public safety and that failing to uphold the termination of Employee "could reasonably and foreseeably lead to him further violating the public's trust," such as by conspiring with inmates to smuggle contraband. MCCF further argues that Employee, as a corrections officer, held a position of public trust because he possessed the authority to make decisions substantially free from supervision that extended to someone other than himself, the inmate population. Finally, MCCF argues that the trial court erred in determining that the aggravating factors were insufficient to overcome the mitigating factors identified by the Arbitrator.

The Union responds by pointing out the narrow nature of the public policy exception to the essence test, and that the third part of the test set forth in *City of Bradford* focuses on whether the *Arbitrator's award* will violate public policy or cause *MCCF* to breach its lawful obligations, not on whether Employee's behavior violated public policy. The Union disputes MCCF's repeated characterization of Employee as having "concealed" his initial falsification, when he was silent for two and one-half months and then admitted the violation upon questioning. The Union argues that the trial court's detailed review of the mitigating factors in its decision was unnecessary, and indeed contrary to the deference owed the Arbitrator. The Union argues that the award of the Arbitrator would not cause MCCF to violate the

public policy against fraud, which is sufficiently enforced by the 30-scheduled-work-day suspension, amounting to 6 weeks without pay.

The Union's argument is persuasive. Our Supreme Court, in *Philadelphia Housing Authority*, explained that "[i]n our view, the rational way to approach the question [of the public policy exception] is to *recognize the relationship between the award and the conduct*; and to require some *reasonable, calibrated, defensible relationship* between the conduct violating dominant public policy and the arbitrator's response." *Phila. Hous. Auth.*, 52 A.3d at 1128 (emphasis added). Under this standard, consideration of the underlying conduct is not completely removed from the inquiry. Rather, courts are to consider the particular circumstances of the case and both aggravating and mitigating factors in determining whether an "award pose[s] an unacceptable risk that a clear public policy will be undermined if the award is implemented." *City of Bradford*, 25 A.3d at 415. After reviewing the circumstances and Arbitrator's factual findings, we are compelled to conclude the Award does not pose such a risk.

While Employee's actions are unacceptable, the Arbitrator's award of 30 working day unpaid suspension—the second most serious sanction under the CBA short of upholding termination—does not bespeak acceptance, but a modulated approach to progressive discipline that is consistent with prior discipline imposed by MCCF for similar behavior. (Arbitrator's Award, R.R. at 16a.) Clearly, there is an explicit, well-defined, and dominant public policy against falsification of documents. *See* Section 4101 of the Crimes Code, 18 Pa.C.S. § 4101 (relating to forgery). MCCF's brief, in addition to incorrectly stating that Employee concealed his falsification for two and one-half months, suggests a "parade of horribles" that Employee *might* do in the future, such as smuggling contraband. Such speculation is without any basis in the particular circumstances of this case. Here, we are faced with a situation in which an employee falsified a doctor's note and submitted it to

avoid an adverse personal consequence (an "occurrence") for being absent from work, rather than in connection with any matters related to his job duties or with a potential to impair the proper administration or security within the prison. Moreover, the Arbitrator credited Employee's expression of remorse and averment that he would not engage in dishonest conduct in the future, and we are bound by that finding.

In sum, the Arbitrator found various mitigating factors, set forth above, and a rationale that included ample explanation for why the award of a 30-day suspension without pay bore a "reasonable, calibrated, defensible" relationship to the threat posed by Employee's conduct and thus does not violate public policy.[2] *See Pa. State Sys. of Higher Educ., Lock Haven Univ. v. Ass'n of Pa. State Coll. & Univ. Faculties*, 193 A.3d 486, 503 (Pa. Cmwlth. 2018) (quoting *Phila. Hous. Auth.*, 52 A.3d at 1128), *appeal denied, stay denied sub nom. Pa. State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Faculties*, 203 A.3d 980 (Pa. 2019).

In light of the foregoing, we affirm.

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[2] With respect to the mitigating factors, MCCF attempts to recast Employee's disciplinary history as aggravating rather than mitigating and to characterize Employee's regret as "hollow." A reviewing court will not second-guess the arbitrator's fact-finding or interpretation as long as the arbitrator has arguably construed or applied the CBA. *Fraternal Order of Transit Police v. Se. Pa. Transit* [sic] *Auth.,* 114 A.3d 893 (Pa. Cmwlth. 2014). In this case, the Arbitrator adequately explained his findings and conclusions so we decline to substitute our judgment of these issues.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monroe County Correctional Facility, : 
                        Appellant : 
                                  : 
               v. : No. 1422 C.D. 2018 
                                  : 
Teamsters Local 773 : 

# **O R D E R**

AND NOW, this 25th day of June, 2019, the Order of the Court of Common Pleas of Monroe County is AFFIRMED.

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge